## DAMAGES CAUSED DY THE FLOODING OF LAND.

[Circuit Court of Huron County.]

CITY OF NORWALK v. FRANCES BLATZ.

Decided, 1906.

*Adverse Possession—Limitation of Actions—In Cases of Damage Caused by the Flooding of Lands—Prescriptive Right to Flood Lands— Injury from Emptying Sewage into a Stream Crossing Plaintiff's Land.*

1. For injuries caused by the flooding of land with water from sewers, which has washed away bridges and soil; damages can be recovered for a period of four years only, preceding the bringing of the action.
2. Recovery from a city can not be had by a land owner for damages caused by the flooding of his land with water from sewers constructed by the city, when such right has been enjoyed by the city for the prescriptive period, and the damages are the natural consequences of the exercise of such right by the city.

PARKER, J.; HAYNES J., and WINCH, J. (sitting in place of WILDMAN, J.), concur.

The action in the court below was by Frances Blatz against the City of Norwalk. In her petition, she set forth that she was the owner of a tract of land of about seven acres in the suburbs of the city; that she had been the owner of this land for more than six years, and that over and across this land from time immemorial there had been and then was a natural watercourse, and until the action upon the part of the city of which she complains, this water-course supplied the land with pure and wholesome water, sufficient in quantity and quality for all domestic and agricultural purposes. She charges that the defendant has constructed, or caused to be constructed, sewers in, through and along many of the streets and avenues of said city—naming them—and that without any right or authority the city made this water-course the outlet for these sewers, and that these sewers carry away from the city the contents of privy vaults and all sorts of offal such as usually go into sewers. She also says that the city has so constructed its drains and

sewers as to throw down upon these premises and into this water-course a greater quantity of water than would naturally flow there, and that this has resulted, in times of freshet, in floods that have carried away bridges upon her premises overspanning this water-course, and has resulted in washing away the soil, and in widening the channel, whereby a part of her land has been permanently lost to her. And she says that the offensive matter that has been brought down in the sewers has been thrown upon her lands, destroying the herbage; that the air has been contaminated and made foul-smelling, disagreeable and unhealthful, and her land rendered unfit for occupancy for dwelling purposes, and for farming and grazing, and that these wrongs have continued during the period of six years next prior to the beginning of the action; and for these wrongs she claims damages in the sum of $1,500.

The city denies that it has committed these wrongs, and denies that it has cast any more water upon her premises than naturally would flow there; but the city goes further and claims that even if it has by sewers or drains, carried down any more water than would naturally flow upon the premises, it has exercised this right for such a period of time, exceeding twenty-one years, under claim of right, that it has acquired the absolute right to do it, and that the plaintiff has no longer any right to object to or oppose it. This is denied by the plaintiff.

The case was submitted to a jury which brought in a verdict in favor of the plaintiff below for $300. The city filed a motion for a new trial upon various grounds, which motion was overruled; and in its petition in error here it sets forth the various grounds upon which it claims this judgment should be reversed; but in the brief filed by counsel for plaintiff in error the grounds really relied upon are stated, and in discussing the case, we will follow those assignments of error. They are five in number, and the fourth and fifth we may as well dismiss at once. The fourth is: ''The court erred in the admission and rejection of testimony.''

We find no error in this respect, unless such as may be covered by another assignment of error involving the subject of the

statute of limitations; and that subject will be discussed further on, and will not be given attention under this assignment.

Fifth. "The attorney for the plaintiff was guilty of misconduct in his final argument to the jury, as stated in the affidavits filed in support of the motion for new trial."

We do not find that the affidavits have been made part of the bill of exceptions; therefore, they can not be considered; and nothing on the subject is otherwise shown.

Going back to the first:

"The verdict of the jury was against the weight of the evidence concerning the right of the city by prescription to maintain its sewage across the premises in question."

We are not prepared to say that that is so as to the sewage; but it seems clear to us that as to the alleged flooding of the premises by an excessive quantity of water, which was one of the matters submitted to the jury, and presumably one of the things taken into consideration in making up their verdict, is against the weight of the evidence. That is to say, the casting of water upon these premises in the quantities shown has been continued by the city for so long a period that it has acquired a right to this use, and the land has become subject to this servitude; and this requires a reversal of the judgment; for we can not tell how much of the $300 was allowed on this account, or how much upon the claim which the evidence supports.

A part of the damage was claimed for the washing of the banks and a part for the washing away of bridges. If the city acquired a right to carry down that quantity of water, then the plaintiff's land was subject to all the natural consequences of the water flowing thereon, and if it washed away some of the banks, or if it carried away bridges that were not constructed so as to withstand floods, that would be one of the burdens the servient land would have to bear; so it follows (since we have found that the verdict as to the right of the city to convey water down in that way was against the weight of the evidence) that so much of the verdict as is founded upon the loss of bridges and the loss of soil and washing away of the soil is unsupported by the evidence.

The second assignment is: ''That the verdict of the jury was excessive and could not have been arrived at in any legitimate way, and was evidently the result of passion and prejudice.''

We find that it was probably excessive on account of the jury adopting such wrong basis for its estimate of the damages, but not because of any passion or prejudice apparent in the record.

One of the questions much debated and apparently carefully considered by the trial judge was as to the statute of limitations applicable to these claims, and to certain elements of damage; and, a retrial being probable, we 'deem it expedient to discuss this question.

The plaintiff in error complains of the refusal of the court to charge upon this subject as requested, and of the charge as given. The requests refused on account of which complaint is made, are numbers 12 and 17; number 12 reads:

''You should in no case, even if you find for the plaintiff, award any damages for the claimed washing away of bridges, or parts of bridges, which occurred before four years next preceeding the beginning of this action.''

That was refused; number 17 reads:

''In no case is the plaintiff entitled to damage against the defendant on account of the washing away of the banks of the stream or water-course in question, which occurred prior to June 19, 1897.''

That would carry it back of the period of four years, and that was refused. The court charged the jury upon this subject as follows:

''The injuries alleged by the plaintiff are of two classes—those of a temporary character affecting, as claimed, the value of the use of the  premises owned by the plaintiff, and those more permanent in their nature and alleged to have affected permanently the value of said premises. The claimed temporary injuries can afford a basis of recovery so far only as they occurred within a period of four years just prior to the beginning of this action, the date of which beginning, as I have told you, was June 19, 1901. The measure of damages for any such temporary injury would be the depreciation, if any, in the

rental value of the property while so affected, during said period. As to alleged permanent injuries to the real estate by the washing away of banks of the claimed water-course and widening its channel, and by the destruction of any bridge or bridges, the plaintiff alleges that this occurred within the period of six years just prior to the same date, June 19, 1901, and if she is entitled to a verdict for such permanent injuries, it can not be enhanced by reason of other injuries caused and occurring prior to the beginning of said period of six years. The measure of such permanent damage would be the depreciation in the permanent market value of the premises affected during the six years.''

Now, we understand that the court did not charge that the recovery, with respect to these permanent injuries, would be limited to six years, because the six years limitation under the statute would be applicable, but upon the theory that the twenty-one years limitation would be applicable, and that the plaintiff could not go back more than six years, because she had limited herself in her petition to six years. So that we have to consider whether four years or twenty-one years is the true limitation in a case of this character.

This is clearly an action for trespass—trespass on the case, or nuisance—and the statute of limitations applicable in Section 4982, Revised Statutes, and not Section 4977, Revised Statutes, which applies to an action for the recovery of title or possession of real property; and it is conceded, we believe, by all, that Section 4982, Revised Statutes, applies generally, though it is urged by defendant in error, and seems to have been the opinion of the court below, that there are certain exceptional circumstances, even in action of trespass, where Section 4977, Revised Statutes, may apply.

Section 4979, Revised Statutes, reads:

''Civil actions other than for the recovery of real property can only be brought within the following periods, after the causes of the action accrues.''

Section 4982, Revised Statutes, reads:

''Within four years: An action for trespass upon real property, but in an action for trespass under ground or injury to

mines, the action shall not be deemed to have accrued until the wrongdoer is discovered.''

This section covers several other classes of actions, the second clause covering actions for relief on the ground of fraud, and the next to the last clause, ''An action for an injury to the rights of the plaintiff not arising on contract and not hereinafter enumerated.''

We think this class of actions comes specifically under the first clause read; and, if not, certainly the last clause would cover it. I read the first clause only of Section 4977, Revised Statutes, because that is all that is applicable here:

''An action for the recovery of the title or possession of real property, can only be brought within twenty-one years after the cause of such action accrues.''

We need not consider what the limitation would have been if plaintiff had elected, as she might have done, to pursue some other remedy; though it may be suggested that if she had proceeded under Section 6448, Revised Statutes, to compel an appropriation of the property, or the right to cast water and sewage upon her land, the limitation would have been twenty-one years from the time the city began to impose such servitude; and it may be that in such case different rules of limitation as to temporary as well as permanent damage, and as to the measure of damages, would obtain. See cases of *Fries* v. *Railway*, 56 Ohio St., 135; *Railway* v. *O'Hara*, 48 Ohio St., 343; *Pitts. & W. Ry.* v. *Perkins*, 49 Ohio St., 326, where it is held that the twenty-one years limitation applies under Section 6448, Revised Statutes. We are advised that the action of the court below upon this subject was influenced, and that the court was practically guided by the case of *Little Miami Ry.* v. *Hambleton*, 40 Ohio St., 496, a decision by the Supreme Court Commission, wherein something is said about the twenty-one years limitation to which I shall refer later.

We think the true rule upon the subject is stated in the case of *Mansfield* v. *Hunt*, 19 C. C., 488, in the third clause of the syllabus:

"When a municipal corporation or an individual commits a nuisance or an act of trespass upon the lands of another, and thereby injures such other, and to the full extent that such act will ever injure him, such municipal corporation or individual is liable at once for such act and its effects, and the time of the statute of limitations runs from the time of such commission of the nuisance or act of trespass. But where the wrong complained of is a continuing nuisance or trespass, until such continued nuisance or trespass by adverse use ripens into a presumptive right and estate in the wrongdoer, the injuried party may bring his action."

Reading from pages 571 to 572, a part of the opinion of the court:

"It is alleged in the petition, and the record shows, that the city has caused its sewage to be discharged into said stream continuously for twelve years next preceding the time of the bringing of this action, to the special and substantial injury of the plaintiff; and that it has ever since in the same way and manner continued to corrupt the waters of said stream to his damage."

It will be noted that the plaintiff undertook to recover for injuries covering a period of twelve years.

"We, therefore, hold that suit could be brought for such injury at any time within twenty-one years from the completion of said act of nuisance or trespass, causing such injury; but damages could only be recovered for injuries resulting therefrom within a period of four years next preceding the bringing of the action. To this extent, such damages would not be barred by Section 4982, Revised Statutes."

The case of *Little Miami Ry.* v. *Hambleton, supra,* seems to us to be confusing. But it must be borne in mind that in that case the railroad company had been so long in possession of the street in question that it had acquired the right to remain there, and it is doubtful if the plaintiff had any remedy under Section 6448, Revised Statutes, for the additional burdens amounting to invasion of his rights, such additional burden by the railroad company consisting of a raising of the grade some twenty inches, and putting in an additional track, thereby

increasing the servitude. At all events, the plaintiff recognized the right of the railroad company to occupy the street, and sought no remedy but compensation for additional damages, but sought permanent damages on the theory that the railroad company would permanently impose such additional burdens. The judgment doubtless put an end to the right of the plaintiff to seek further remedy by way of damage.

A consideration of this condition will aid us, we think, in determining what was intended by the court in the use of the term "permanent injuries." It was said in that case—reading the second and third clauses of the syllabus:

"2. That the plaintiff may recover for permanent injury to his property, resulting from a change of grade, or for the additional track, at any time before the right to maaintain the track at the raised grade and the additional track, was complete.

"3. That the right to recover for temporary injury resulting from a change of grade, or for the additional track, is limited to four years prior to the commencement of an action for the same."

This syllabus leaves room for the inference that the right to recover for permanent injury might reach back of the period of four years. In the opinion by Judge McCauley, it is said, page 503:

"As to the temporary injury resulting from the raised track before the lease, the Little Miami Company alone would be liable for that. And this is so because the injury is not continuing in its nature, and having occurred before the lease, the lessee had no connection with it. As to the temporary injury after the lease, both companies might be liable for it. If the lessor without right to do so, created that which at times caused damage, as by overflow of water or any injury merely temporary, and the lessee continued the cause of such injury, both should be liable.

"The charge of the court on the trial below was correct, so far as the causes of damages were affected by limitation; that is, that for permanent injury the limitation would be twenty-one years, the whole period during which the acts of the defendants in continuing the cause of such injury was without legal right.

And that for temporary injury the plaintiff would be limited to four years before his action for the same.''

The court does not say what it means by ''permanent injury,'' and what was meant is not apparent from a reading of the case. The case does not disclose what, if anything, was allowed by the jury to the plaintiff for so-called ''permanent injuries,'' or of what those so-called permanent injuries consisted; we are left very much in the dark on that subject, except that the court treats the overflow of water, or consequences of the overflow of water, as injuries of a temporary character. The injuries, as shown by the proof, were of two kinds: first, those resulting from the overflow of water on the premises of the plaintiff, and consequent injuries of a temporary kind; and, second, injury in its nature permanent, resulting mainly from a change of grade of the railroad, whereby the relative level of the property of the plaintiff and the railroad was changed, and whereby permanent changes in the buildings and improvements on the plaintiff's property were made necessary, and in consequence of which his property was permanently damaged.

It seems to us that the real ground upon which the court may have made, and, we assume, did make, the distinction between temporary and permanent injury—the real classification—is indicated in the brief of counsel for defendant in error. The counsel were, Hoadly, Johnston & Colston. I read a part of that brief:

''Statute of limitations. Within what time was the action barred? The answer to this question depends upon the character of the act or acts forming the basis of the cause of action. If that which is done amounts to a permanent destruction or modification of the lot owner's easement or right of property in the street, the lot owner's action therefor will not be barred until the usurpation has continued for a length of time necessary to create a right by prescription, which in Ohio is twenty-one years. But if that which is done be not continuous in its nature or effect, but merely occasional or intermittent, causing specific damage, then each of said acts is a distinct and separate trespass, and an action therefor should be brought within four years. The latter is a mere tort, while the former is the assertion, by

disseizin, of title to an incorporeal hereditament belonging to the lot owner. This distinction exists in the present case.''

And we think that the raising of the grade and requiring a change in, and a modification of the plaintiff's buildings, thereby increasing the servitude, or—putting it the other way—affecting the plaintiff's easement in the street, was the thing referred to by Judge McCauley when he spoke of the relative level of the property of the plaintiff and the railroad company being broken up and destroyed, and permanent changes and improvements in the buildings of the plaintiff being made necessary.

This made a case of permanent modification of an easement or right of property in a street, a usurpation that would ripen into a right of property in twenty-one years. Therefore, any act tending to the establishment of such permanent right was an act calculated to create permanent injury. The permanent injury referred to is the imposition of a continuing and permanent burden upon the estate of the plaintiff, in the nature of an easement on the one hand and a servitude on the other.

In any case where the permanency of such a burden will be fixed by a judgment, and the plaintiff obtains satisfaction therefor, as in appropriation proceedings, or suit for full compensation for property taken, it is manifest that the damages resulting therefrom should be taken into account; but where the rights of parties are not to be thus fixed and determined, as in a suit for damages for trespass, it is not apparent to us that such damages should be allowed to the plaintiff. This principle was recognized by the court in the case at bar when it limited the plaintiff's right of recovery for such alleged invasion of her right, amounting to an exercise of an easement, to the temporary effect—that is, the effect upon the rental value of the premises. Manifestly, this is right; otherwise the plaintiff might recover full compensation for a permanent injury resulting from the assertion of an easement or permanent right, and then sue for and recover damages again and again for resulting temporary injuries, or even enjoin the exercise of the right acquired by the full compensation awarded for permanent injuries. This

rule is stated in the fourth clause of the syllabus in the case of *Mansfield* v. *Hunt, supra*:

"When the nuisance complained of is of such a character as can be removed by removing the cause thereof, or for the continuance of which a second or third action may be maintained, or which may be abated by the order of a competent court, and the injury to the premises already inflicted is not of a permanent nature, the rule that, in actions for nuisance, the measure of damages is the difference between the market value of the land before and after the occurrence of the injury, is not the rule for assessing damages."

When it is said in *Little Miami Ry.* v. *Hambleton, supra,* that the plaintiff may recover for permanent injury to his property, resulting from a change of grade, or for the additional track, at any time before the right to maintain the raised grade and the additional track was complete—that is, at any time before twenty-one years adverse exercise of the right—we do not understand that anything more is meant than that as to such continuing trespass and continuing and permanent results, the four years statute shall not apply, even though the initial step and successive steps of such wrongdoing occurred long prior to such four years period; that the trespass being of a continuing nature, so long as it was continued there was constantly arising a fresh wrong and fresh damage from such continuation of the act.

By the statute the limitation is the same — that is, four years—whether the injury from trepass is temporary or permanent; but in the case of permanent injury resulting and flowing continuously from a continuing trespass, the act causing the injury is necessarily of such a nature that the four years limitation has no effect upon it or its results so long as the trespass is continued, except to limit the recovery to damages resulting within four years of the bringing of suit.

This is illustrated by the case of *Valley Ry.* v. *Franz,* 43 Ohio St., 623. A question was presented in that case as to the statute of limitations. A stream was diverted and its course was so changed—wrongfully, as claimed by the plaintiff below

—that it washed the banks of his land to his injury. He brought an action against the railroad company for this wrong. It appeared from his petition that the diversion of this stream had occurred more than four years before the action was begun, and the railroad company interposed by demurrer the bar of this statute. It was also disclosed by the petition that the washing was continuous, because the diverted stream or current was continuous in its flow; and the court treats it as a continuing trespass, and the injury as a continuing injury. I read the syllabus:

"A railway company, like an individual, may, on its own land and for its own benefit, lawfully cut a new channel  *  *  *  * if thereby no damage is caused to, another; but when it so controls and directs the course of the stream that, as the stream leaves the company's premises and control, the water is thus thrown across the old channel and against and upon the land of another, and thereby causes damage to such other, the company is liable for such damage; and while the company, after thus causing great damage, and promising to repair the damage done and stop future damage, continues so to control and direct the stream, and the stream continues to cause additional damage, the company becomes liable for the additional damage, and will continue so to become liable until the company acquires a right to cause such damage; and, until such right is acquired by the company, the four years statute of limitations will not bar a proper recovery for damages."

In the course of the opinion by Judge Follett some illustrations are given from other cases and decisions that I will quote, pages 625, 626:

"When a man commits an act of trespass upon another's land, and thereby injures such other at once and to the full extent that such act will ever injure him, he is liable at once for this one act and all its effects; and the time of the statute of limitations runs from the time of such act of trespass. To this extent only is the case of *Kansas Pacific Ry.* v. *Mihlman,* 17 Kan., 224, cited here, as the court found that the trespass upon complainant's land was a single completed act. And the same is true of the case of *Williams* v. *Coal Co.,* 37 Ohio St., 583.

"But where the act of trespass is a permanent trespass, as the erection of buttresses to support a turnpike road (as in

*Holmes* v. *Wilson*, 10 Ad. & El., 503), or the erection and maintenance of a permanent building (as in *Thompson* v. *Gibson*, 7 M. & W., 456), it may be said to be a continuing trespass or nuisance for which a cause of action accrues, and may be brought at any time until, by adverse use or possession, the trespasser has enforced an adverse claim that has ripened, and has become a presumptive right or a valid estate. 'Where the trustees of a turnpike road built buttresses to support it on the land of A, and A thereupon sued them and their workmen in trespass for such erection, and accepted money paid into court in full satisfaction of the trespass—*Held*: That after notice to defendants to remove the buttresses, and a refusal to do so, A might bring another action of trespass against them for keeping and continuing the buttresses on the land, to which the former recovery was no bar.' *Holmes* v. *Wilson, supra.*

" 'The defendants were liable for continuing the nuisance, although they had no right to enter upon the land to remove it, and that the action was therefore maintainable.' *Thompson* v. *Gibson, supra.*

"An owner of land can rightly do, on his own land, any act that does not interfere with another's rights; and such act is not illegal. But whenever such act causes injury to another, such owner is liable for the damage so caused, and the cause of action accrues at the time of such damage, and not before.
\* \* \* \*

"And when the owner of land rightly and lawfully does an act entirely on his own land, and by means of such act puts in action, or directs a force against, or upon, or that affects another's land, without such other's consent or permission, such owner and actor is liable to such other for the damages thereby so caused the latter, and at once a cause of action accrues for such damages; and such force, if so continued, is continued by the act of such owner and actor, and it may be regarded as a continuing trespass or nuisance; and each additional damage thereby caused is caused by him and is an additional cause of action; and until such continued trespass or nuisance by adverse use ripens into and becomes a presumptive right and estate in the former, the latter may bring his action."

It is a cause of action that arises at the time the injury is done. It is, however, subject to the rule that suit upon it must be brought within four years of the time the cause of action accrues. The cause of action does not come under the twenty-one years statute. It is not an action for the recovery of com-

pensation for land, but it is an action for recovery on account of injury to land; which cause of action may accrue and be enforced at any time before the right is taken away by the twenty-one years limitation, the particular claim for damages being subject also to the four years limitation; *i. e.,* such damages must have been sustained within four years.

I quote further from this case, page 628:

"In *Whitehouse* v. *Fellows,* 100 Eng. C. L., 765, the court held: 'If the cause of action be, not the doing of the thing, but the resulting of damage only, the period of limitation is to be computed from the time when the plaintiff sustained the injury.' "

There are more illustrations to be found in this opinion. We regard it as significant that *Valley Ry.* v. *Franz, supra,* decided by the Supreme Court in 1885, takes no account or notice of the case of *Little Miami Ry.* v. *Hambleton, supra,* decided by the Supreme Court Commission in 1884. If the Supreme Court had understood the rule to be as the court below in the case at bar, relying upon this earlier authority, seemed to understand it, it need not have pursued this course of reasoning nor cited these authorities to show that the plaintiff's cause of action was not barred, but might have followed the earlier case. The diversion of the stream was on November 4, 1874, and the action was commenced on August 27, 1881, a period of nearly seven years. The court might have said at once that under the authority of the case of *Little Miami Ry.* v. *Hambleton, supra,* since the washing away of the banks and the taking away of the soil was a permanent injury to the premises, the twenty-one years statute of limitations applied; but there is no such suggestion in the case. The petition is sustained upon the ground that it is a continuing trespass, and that the injury by the washing away of the banks occurred within the four years period.

An injury that is transient, like that of a flood—here to-day and gone tomorrow, doing damage for a time to the soil, or creating bad odors that do not endure, or are not constant— the effect of which disappears with the cause, and the future

recurrence of which may be prevented by the cessation of the trespass of nuisance, so long at least as the right to continue the same has not accrued, may be regarded as in a sense a temporary injury.

It is conceded that ordinarily it is only temporary effects of this character that can be taken into account further back than four years from the bringing of the suit. But here we have the washing away of the banks, and the widening of the channel, and the destruction of bridges, classed by the court below as permanent injuries, on account of which plaintiff may go back any time short of twenty-one years. They are permanent in the sense that, in measuring the damages, the lessened value of the real estate is to be considered, because these thing are not restored by the cessation of the trespass or the nuisance; but is the fact that they are not so restored a criterion for determining their permanency, in the sense that the term is applied in *Little Miami Ry.* v. *Hambleton, supra,* in giving effect to the statute of limitations? We think not. If it were so, why should not the limitation for permanent injuries in all cases of trespass be fixed at twenty-one years? Why apply it to cases of continuing trepass? What authority can be found in the statute for this distinction? We can find none whatever. If applicable to such cases, what rule could be applied where a trespass has been continued for twenty years and then discontinued so that it is no longer a continuing trespass, and where an action is brought by the person injured for such injuries as the taking away of a bridge, or the taking away of a part of the soil, or the chopping down of his fruit trees, or shade trees, or the like, occurring twenty years before the action is planted?

If the nature of the trespass, as being continuing, has the effect of modifying the statute of limitations, making the twenty-one years statute apply, rather than the four years statute, then it should apply, we think, as well to the case where the trespass is discontinued before suit as to a case where it is continued up to the time suit is brought. The discontinuing of the trespass can not have the effect of instantly bringing a different statute of limitation into operation upon the cause of action already accrued.

If I go to a neighbor's land and move away or destroy his bridge, or take away a part of his soil, doing it forcibly—a simple ordinary trespass—of course it is entirely clear that, notwithstanding the permanency of that injury, in the sense that my ceasing from my depredation will not restore the property, the cause of action would be barred in four years. If I should flood his land and continue to flood it from day to day, or from year to year, trespassing in the manner that is called a continuing trespass, what authority can be found in the statutes for saying that the same rule of limitation upon an action for trespass shall not apply? The statute covers all actions of trespass of all sorts, natures and kinds.

Holding this view of the matter, we conclude that the court erred in refusing to charge as requested upon the subject of the statute of limitations, and in charging as it did.

There was one other request to charge that we think was in harmony with the law as we laid it down in the case of the shade trees, which has been before this court some two or three times:

"You are not permitted to arrive at values or conclusions in the absence of evidence either direct or circumstantial. If you are entirely unable to separate and distinguish, under the evidence and the reasonable inference to be drawn therefrom, the extent of, and damage from, the claimed washing of the banks of the stream in question, caused by flood water which would drain through said stream during freshets without regard to any claimed act of the defendant, from the washing, if any, caused by the claimed acts of the city of Norwalk, you should not consider that element. The law will not permit a jury to arrive at a conclusion from mere conjecture or guess."

We think that is good law and should have been given. Because of the error pointed out, the judgment of the court of common pleas will be reversed.

*Sherman Culp* and *S. M. Young*, for plaintiff in error.

*E. G. Marlin* and *A. V. Andrews*, for defendant in error