### KANSAS PACIFIC RAILWAY v. WM. MIHLMAN.

1. **TRESPASS UPON LAND;** *When Action Accrues; Completed Trespass.* Where A. enters upon the land of B. and digs a ditch thereon, there is a direct invasion of the rights of B., a completed trespass, and the cause of action for all injuries resulting therefrom commences to run at the time of the trespass. And the fact that A. does not reënter B.'s land, and fill up the ditch, does not make him a continuous wrongdoer and liable to repeated actions as long as the ditch remains unfilled.

2. —————— *Continuing Trespass.* A party may be responsible as a continuing wrongdoer, as for permitting a nuisance to remain upon his lands; but no one can be charged as such continuing wrongdoer who has not the right and is not under the duty of terminating that which causes the injury.

3. —————— *When Re-entry is a New Trespass.* A party who enters another's land and commits a trespass by digging a ditch does not thereby acquire a right to reënter and fill up the ditch. He would be liable as a trespasser if he did so reënter.

4. —————— *Completed Trespass; Damages.* Though from a completed wrong there afterward results new and unforeseen injury, there does not arise a new cause of action; and if a recovery has been had for the wrong prior to the occurrence of the new injury, no recovery can be had for such injury.

5. —————— *Duty of Injured Party.* After a wrong has been committed, it is the duty of the injured party to make reasonable efforts to prevent an increase or extension of the injury, and if he fails to do so, he cannot recover for such increased injury.

6. **PRACTICE,** *in Supreme Court.* As a general rule the supreme court will notice no question not distinctly raised in the trial courts and presented first to such courts for their decision.

*Error from Riley District Court.*

TRESPASS, brought by *Mihlman,* to recover for injuries to his lands and crops. His petition was filed 20th May 1874; and after the formal parts, and the allegation that the lands overflowed "for a long time prior thereto had been cultivated for and as a farm," said petition averred —

"That prior to the — day of ——— 1871, the defendant company made a culvert and ditch adjacent to and partly on plaintiff's aforesaid premises, which said culvert and ditch the defendant has since maintained, and by means of such culvert and ditch the defendant has diverted the waters which were accustomed to flow there from their natural channel and course onto the pasture and cultivated lands of the plaintiff, being the aforementioned premises, and by means of overflow caused by such diversion of the waters by means of the culvert and ditch aforesaid, the pasture of the plaintiff has been wholly destroyed, and the same has grown up to weeds, and has become foul, noxious and unfit for use for two years last past; and by means of such overflow, caused as aforesaid by the defendant, of the aforesaid lands of plaintiff for the two years last past, and for each of said years, the plaintiff's growing crops on said lands have been destroyed, and the said lands by reason of such overflow for the two years last past, have been rendered unfit for cultivation, and the plaintiff has been deprived by reason thereof of the use, benefit and profit of said lands. And the plaintiff says that by reason of such overflow, caused as aforesaid, and the committing the wrongs and the trespasses as aforesaid described on the part of the defendant to and upon the plaintiff's said premises, the plaintiff has suffered damages in the sum of two thousand dollars. Wherefore," etc.

The answer alleged that in 1866 the defendant acquired title in fee from plaintiff of a strip of land 100 feet wide through the plaintiff's said farm as and for the right-of-way for its railroad, and that defendant's "said railroad was then skillfully, prudently and properly constructed on said strip of land, and has ever since been kept in the same order and condition as so constructed." The answer then denied the title of plaintiff to said strip of land, "or to any easement,

servitude, or right of any description affecting the said land or its use thereof," and denied that "it is in possession of or has ever entered upon any other land in plaintiff's petition mentioned." Trial at the September Term 1874 of the district court. It was shown that the ditches cut on plaintiff's land were cut prior to 1868, and when defendant was constructing its railroad. Verdict and judgment for *Mihlman* for $1,000 damages. The *Railway Company* brings the case here on error.

*E. W. Dennis,* and *J. P. Usher,* for plaintiff in error.

*McClure & Humphrey,* and *Green & Hessin,* for defendant in error.

The opinion of the court was delivered by

BREWER, J.: Mihlman was the owner of a tract of land in Riley county. In December 1866, he deeded the right-of-way through said land to the railway company, plaintiff in error, for its railroad. Prior to 1868 the road was constructed over this right-of-way. It is not claimed that the road was not built on the tract deeded, nor that it was unskillfully built. The road crossed at right angles a ravine which seems to have drained quite an extent of territory, and through which ran after a heavy rain a large volume of surface-water. It does not appear to have been technically a watercourse, or that anything but surface-water ran through it. At or near this ravine the company built two culverts. Leading to and from these culverts, it, according to Mihlman's testimony, dug two or three ditches, partly on the right-of-way and partly on Mihlman's land. In 1872 and 1873, from these ditches, or in consequence of the culverts being unable to carry off all the surface-water, the land of Mihlman was flooded, and his crops destroyed; and for this damage he brought this action. It does not appear that the company entered upon Mihlman's land, or did any work thereon, at any time within five years prior to the commence-

ment of this action. In reference to this, counsel for defendant in error say:

"The *gravaman* of the charge contained in the plaintiff's petition is, that the defendant company having by unlawfully digging ditches on the plaintiff's land created and continued to maintain a nuisance thereon, from which the plaintiff in the years 1872 and 1873 suffered the damages complained of."

And again:

"We do not charge that the company did not build its railroad on its own land, nor that it unskillfully built its road; and since we make no charge of that kind, nor make any claim predicated upon such a state of facts, it is irrelevant to state in the answer, conversely, that the road was built skillfully and on the company's own land. If the company had confined its operations to its own land, no harm would have resulted, and it would not now be called upon to respond in damages for the continuance of a nuisance to the land of Mihlman."

And still again:

"The question is, rather, had the company the right to enter and occupy the lands of Mihlman for the purpose of digging and maintaining ditches to drain the waters from their railroad at that point, without Mihlman's consent? And is it not answerable for the damages occasioned by such acts?"

It is evident from these quotations that the operations on Mihlman's land, and not those on the right-of-way, are considered the basis of the cause of action. The first matter to

1. Trespass; statute of limitations. which our attention is called, and which we shall notice, is, that of the statute of limitations. Actions of trespass upon real property are barred in two years. (Gen. Stat. 633, § 18, clause 3.) If the cause of action dates from the time the defendant entered upon the plaintiff's land and dug the ditches, and was simply for the trespass, it was barred; if from the time the injury to Mihlman's crops occurred, it would probably not be. So far as the company had acted, its action was finished when it had dug the ditches. (We are now considering the question with reference solely to what it did off its own land, and upon that of Mihlman.) It had invaded Mihlman's rights; it had committed a trespass on

his lands. It was then responsible in an action for the injury it had done by that trespass. Such action might have been brought immediately, and in such action could have been recovered all damages done to Mihlman by the trespass, and which might have included the cost of restoring the ground to the condition it was before the digging of the ditches. What new act has the company since done? What wrong has it done to Mihlman's property? Nothing. Its hands have been still. It has made no new invasion of his rights. Suppose an action had been brought, and damages recovered, for the trespass immediately after it occurred: what new act of the company could now be alleged as the basis of recovery? True, the trespass has now resulted in greater loss than was then foreseen or estimated in assessment of damages; but an increase in the damages resulting, adds no new cause of action. A. commits an assault and battery on B. Action is brought, and damages recovered. That ends the matter. And though B.'s sufferings are prolonged, and his injuries prove to be permanent, and of a far more serious character than was thought at the time of the recovery of damages, there can be no new action, and no further recovery. *Fetter v. Beale*, 1 Salk. 11. "We think this action is for an injury to a right; and consequently there was a complete cause of action when the wrong was done, and not a new cause of action when damage was sustained by reason of the original wrong."–Baron Parke, in *Nicklin v. Williams*, 10 Ex. 259. See also, *Northrup v. Hill*, 57 N. Y. 351. So, for the trespass, the cause of action is complete at the time, and an increase in the resulting damages gives no new cause of action. There are cases, it is true, in which the cause of action is based upon the actual occurrence of damage, and dates therefrom, and not upon or from the prior act which resulted in the damage; but these are all cases in which the prior act is itself lawful, and furnishes no cause of action, or where it is considered as a continuing act; as, where one excavates on his own land, and thereby withdraws the lateral support to his neighbor's soil

*When right of action accrues. Completed trespass.*

and buildings, the act is itself lawful, and only becomes the basis of a cause of action for damages when it actually results in injury; and the cause of action dates, not from the time of the excavation, but from the time of the subsidence. *Bonomi v. Backhouse,* 96 En. Com. L. 653. Here no trespass is committed. The party is simply using his own property, and using it lawfully; and it is only when he conflicts with the rule, *sic utere tuo, ut alienum non lœdas,* that his neighbor has any cause of complaint. If after the excavation he builds on his own ground a wall which continues the support of his neighbor's soil and buildings, that neighbor has no action. The excavation therefore is not the foundation of the action, but the damage consequential upon the excavation; and no cause of action exists until the damage occurs. In reference to this class of cases, Baron Parke says, in *Nicklin v. Williams,* supra, "But on examining those cases they do not appear to be for injuries to rights, which this is, but solely for consequential damages where the original act itself was no wrong, and only became so by reason of those damages, and therefore they do not apply." It is true, that in this case the court of Exchequer considered the excavation on one's own land, whereby the lateral support of the neighbor's soil and buildings was taken away, a direct invasion of that neighbor's rights, and therefore itself the basis of the cause of action, as did also the Queen's Bench in the case just cited of *Bonomi v. Backhouse,* and in this respect both courts were overruled by the Exchequer Chamber. But the principle enunciated was the same all the way through, and the only difference was in the application. In delivering the opinion of the Ex. Chamber, Mr. Justice Willes says: "There is no doubt that for an injury to a right, an action lies; but the question is, what is the plaintiff's right? Is it that his land should remain in its natural state, unaffected by any act done in the neighboring land, or is it that nothing should be done in the neighboring land from which a jury would find that damage might possibly accrue?" See also the case of *Roberts v. Reed,* 16 East, 215, in which it appeared that the surveyors of a

highway, by excavations in it, took away the support of the plaintiff's wall, and it was held that no action lay until damage resulted to the wall. In *Whitehouse v. Fellowes*, 100 Eng. C. L. (or 10 Common Bench) N.S. 765, the trustees of a turnpike had converted an open ditch at the side of their road into a covered drain. In heavy storms this drain was inadequate to the carrying off of the water, and in consequence the plaintiff's lands were overflowed; and it was held that the cause of action dated from the damage. There was here no trespass, no invasion upon the plaintiff's lands, or his rights, until the actual overflow and injury. Other cases might be cited, but enough have been to show the principle which underlies them, namely, that where the original act itself is no invasion of the plaintiff's rights, then there is no cause of action until such act has caused damage, and the right of action dates from that time. On the other hand, as we have already stated, where the original act is unlawful, and an invasion of the plaintiff's rights, the cause of action dates from that act, and a new cause does not arise from new damage resulting therefrom. The case of *Lord Oakley v. The Kensington Canal Co.*, 5 Barn. & Ad. 138, is strongly in point. The canal company entered upon plaintiff's land and dug it away for the purpose of sloping the banks of their canal, in consequence of which the land was overflowed at every high tide. It was held, that the injury was complete when the trespass was committed, and that no new cause of action arose with every overflow. So, in the case of *Clegg v. Dearden*, 64 Eng. C. L. (or 12 Ad. & Ellis) N.S. 575, the defendant made an excavation into the mine of plaintiff, through which water flowed into the mine. It was held that the cause of action was complete at the time the excavation was made. Lord Denman in giving the opinion of the court says: "The gist of the action, as stated in the declaration, is the keeping open and unfilled up an aperture and excavation made by the defendant into the plaintiff's mine. By the custom, the defendant was entitled to excavate up to the boundary of his mine, without having any barrier, and the cause of action

therefore is, the not filling up the excavation made by him on the plaintiff's side of the boundary and within their mine. It is not, as in the case of *Holmes v. Wilson*, 10 A. & E. 503, a continuing of something wrongfully placed by the defendant upon the premises of the plaintiff; nor is it a continuing of something placed upon the land of a third person to the nuisance of the plaintiff, as in the case of *Thompson v. Gibson*, 7 M. & W. 456. There is a legal obligation to discontinue a trespass, or remove a nuisance; but no such obligation upon a trespasser to replace what he has pulled down or destroyed upon the land of another, though he is liable in an action of trespass to compensate in damages for the loss sustained. The defendant having made an excavation and aperture in the plaintiff's land, was liable to an action of trespass; but no cause of action arises from his omitting to reënter the plaintiff's land and fill up the excavation. Such an omission is neither a continuation of a trespass, nor of a nuisance; nor is it a breach of any legal duty." Language could not be more apt than this for the case at bar. Counsel here would make the gist of the action the continuance of the ditch, as there the continuance of the excavation; but the fact is, the wrong was done when the ditch was dug, and an omission to reënter and fill up the ditch was a breach of no legal duty. There are cases in which the original act is considered as a continuing act, and daily giving rise to a new cause of action. Where one creates a nuisance, and permits it to remain, so long as it remains it is treated as a continuing wrong, and giving rise, over and over again, to causes of action. But the principle upon which one is charged as a continuing wrongdoer is, that he has a legal right, and is under a legal duty, to terminate the cause of the injury. As to anything upon his own land, a party has a right to control and remove it, and if it is so much of an injury to his neighbor's rights as to amount to a nuisance, is under a legal obligation to do so; but as to that upon his neighbor's land, he has no such right, and is under no such duty. Hence the distinction between nuisance and

*2. Continuing trespass.*

trespass.   As is said by Angell, (Watercourses, p. 556,) "The
distinction between nuisance and trespass is, that nuisance is
only a consequence or result of what is not directly or imme-
diately injurious, but its effect is injurious, while trespass is a
direct and immediate invasion of property." So an eminent
English text-writer defines a private nuisance as "Anything
done to the hurt or annoyance of the lands, tenements and
hereditaments of another, and not amounting to a trespass."
3 Stephen's Comm. p. 39.  And Hilliard, (1 Torts, 550,) "One
of the characteristics of nuisance, as distinguished from tres-
pass or conversion is, that it consists *in a use of one's own
property*, which involves injury to the property or other
rights or interests of his neighbor." So, if a party who has
created a nuisance upon his own land, parts with that land
he ceases to be responsible for the nuisance, except perhaps
in cases where he continues to receive some benefit therefrom.
*Hanse v. Cowing*, 1 Lans. 288.  It is true, the books speak of
such a thing as a continuing trespass.  In 1 Add. on Torts, 332,
it is said, that "If a man throws a heap of stones, or builds a
wall, or plants posts or rails on his neighbor's land, and there
leaves them, an action will lie against him for the trespass, and
the right to sue will continue from day to day until the incum-
brance is removed."   And in the case of *Holmes v. Wilson*, 37
Eng. C. L. 273, (or 10 A. & E. 503,) it appeared that the
trustees of a turnpike to support it built buttresses on the
plaintiff's land.   He brought an action, and recovered for
the trespass.  He then notified them to remove the but-
tresses.   Failing to do so, he sued again, and it was held that
the action would lie.   It seems to us very doubtful whether
this ruling can be sustained upon principle.   As suggested
by the reporter, suppose plaintiff had recovered as a part of
his damages in the first action, as he properly might, the ex-
pense of removing these buttresses, and this fact had appeared
in the second suit: could the action have been maintained?
And what difference, we ask, does it make, whether he did
actually recover for such expense?   It was a proper matter
of damages; it was a part of the amount necessary to place

the land as it was before the trespass; he was entitled to recover it, if he proved it; and if he failed to prove it, or if after proving it the court refused to allow it, neither the failure nor the error laid the foundation for a second action.

3. Re-entry, a new trespass. And what right does the first trespass give the trespasser to reënter and commit a second trespass? True, in this case, the plaintiff had requested the trustees to remove the buttresses, and that might be considered a license to enter, and a waiver of the trespass. But where there is no such request, as in the case before us, how is it? If the railway company had entered to fill up the ditches, could not Mihlman have maintained his action for that as a trespass? Was he not at liberty to appropriate the benefit of the company's work in digging the ditches, and prevent any person from interfering therewith, and recover damages from any one that did interfere? It seems so to us, unquestionably. And it seems that the rule would be the same in case of such a trespass as suggested in Addison, of the building of a wall, or the heaping up of a pile of stones. Hence we doubt the doctrine as stated by him, and as decided in *Holmes v. Wilson.* At any rate, we do not think it can be extended beyond the character of trespasses there named, that is, those in which something is carried to and placed upon the land. Take this illustration: A. trespasses upon B.'s land, and digs a well. And that is a trespass very like that of digging a ditch. A. never enters upon the land again. The well is never filled up, but is permitted to remain. Twenty years thereafter, in a wet season, the water from the well soaks through the soil into a cellar, floods it, and causes damage. Is A. responsible for the damage? or does the statute bar an action? Was the digging of the well a single act, and a completed wrong? or does its existence make A. a continuous trespasser, and liable for every recurring damage? But without pursuing the discussion further, we hold that in digging the ditches on Mihlman's land the company was a trespasser; that the cause of action for that wrong was then complete, and then commenced to run; that the failure

16—17 KAS.

to enter and fill up the ditches, did not render the company guilty of continuing a nuisance, nor make it in any legal sense a continuous wrongdoer, and that therefore, as to any injury resulting therefrom, as shown in the record, the statute of limitations was a bar.

Another question presented is, as to the measure of damages. Here the company dug some ditches four or five years before the injuries now complained of. The ditches were all dug in one day, were of no great length, and could have been filled without much expense. Instead of immediately complaining of the trespass, filling up the ditches, and recovering his damages therefor, Mihlman permits them to remain for years, and then recovers $1,000 for damages just done to his crops. And if the theory of the learned counsel for defendant in error were correct, he could go on suing, year by year, for every injury his crops received in consequence of these ditches, whereas the expenditure of a few dollars in filling the ditches would have averted all loss. Will the law tolerate this? We think not. The proposition is sound, that while a wrongdoer should compensate for all the injury naturally and fairly resulting from his wrong, yet the party upon whom the wrong is done should take reasonable care of his property, and make reasonable effort to prevent any extension of the injury. If a party can with reasonable effort prevent an injury from spreading, he ought to do it. It is no more than simple justice to the party who has caused the injury, especially if that party has acted without malice, and without a thought of causing injury. In *Loker v. Damon*, 17 Pick. 284, defendant had wrongfully pulled down a fence in November, which plaintiff did not repair till the following May; cattle got in and ate the grass, for the loss of which he claimed. The court below ruled that plaintiff could only recover enough to remunerate him for replacing the fences. The learned Chief Justice SHAW said: "The direction respecting damages was right. In assessing damages, the direct and immediate consequences of the injurious act are to be regarded, and not remote, speculative and contingent consequences, which

5. Duty of injured party.

the party injured might easily have avoided by his own act. Suppose a man should enter his neighbor's field unlawfully, and leave the gate open; if, before the owner knows it, cattle enter and destroy the crop, the trespasser is responsible. But if the owner sees the gate open, and passes it frequently, and willfully and obstinately, or through gross negligence, leaves it open all summer, and cattle get in, it is his own folly. So, if one throw a stone and break a window, the cost of repairing the window is the ordinary measure of damage. But if the owner suffers the window to remain without repairing a great length of time after notice of the fact, and his furniture or pictures, or other valuable articles, sustain damage, or the rain beats in and rots the window, this damage would be too remote. We think the jury were rightly instructed, that as the trespass consisted in removing a few rods of fence, the proper measure of damage was the cost of repairing it, and not the loss of a subsequent year's crop, arising from the want of such fence." In *Chase v. N. Y. Central Rld. Co.*, 24 Barb. 273, in an action brought to recover damages for injuries done to plaintiff's house and grounds by water, alleged to have been turned onto the plaintiff's land by defendant in constructing a railroad, it was held that the owner of the house under such circumstances is bound to use reasonable care, skill and diligence, adapted to the occasion, to save his house from being injured by the water, notwithstanding it came upon his premises by the fault or negligence of the defendant, or suffer the loss himself. In *Lawson v. Price*, 2 Law & Eq. Rep. 426, the court of appeals of Maryland say, that, "After a wrong has been committed, it is the duty of the injured party to make reasonable efforts to prevent its increase." Now in this case, the jury not only heard the testimony, but made a personal examination of the premises, and the question ought to have been submitted to them whether Mihlman could not, with reasonable effort, and small expense, have filled up the ditches, repaired the wrong done by the company, and prevented any destruction of his crops,

or depreciation of the value of his real estate; and they should have been instructed that if this were so, the measure of damages would not be the value of the crops destroyed, but the costs of filling the ditches, and placing the land in the condition it was before the trespass, together with the value of the direct injury done by the trespass.

The questions we have discussed are in the case. It is fair to state however, that they were not both presented to the 6. Practice in supreme court. attention of the court below; and as a general rule, where the question is not presented in that court, it will not be noticed in this court. We notice a growing disposition on the part of some counsel to regard the trial courts as simply instrumentalities for the collection of evidence, and upon the evidence so collected to raise questions of law for the first time in this court. Such a practice is unjust to both the trial court, and this court. Every question that is in a case should be presented to that court, and its ruling had directly thereon. The reasons for this have been often given, and we need not repeat them here. We desire simply to call attention to the matter. One at least of the questions we have considered was called to the attention of the district court; and as, for its error in respect to that, the judgment had to be reversed, we deemed it right to notice the other.

The judgment will be reversed, and the case remanded with instructions to grant a new trial.

All the Justices concurring.