## SHANNON et al. v. McNABB.

No. 1041.    Opinion Filed November 14, 1911.

1.  ANIMALS—Damages by Cattle to Crops—Liability. Under sec. 1013, Stat. Ind. Ter. 1899 (Mans. Dig. sec 1670), persons who, directly or indirectly, wilfully allowed cattle to be turned loose in any enclosure where crops were growing, or had been cultivated and not gathered, without the consent of all persons own-

ing and cultivating such crops, were denounced as guilty of a misdemeanor, and in a case where such facts were shown, all who participated therein were liable for all damages occasioned thereby.

2.   **DAMAGES—Measure of—Continuing Tort.** The rule that a party aggrieved by a trespass will not be allowed to recover damages resulting from his neglect to employ the obvious and ordinary means of preventing or lessening them, is simply one of good faith and fair dealing; but whenever one's right to his property is wilfully or criminally invaded by a continuing tort, and injury arises therefrom, he may recover any damages sustained by reason of such invasion, and is not bound under such circumstances to do any act to relieve the tortfeasors of the ordinary consequences of their wrongs, and this is especially true where the trespassers have profited by their tort.

(Syllabus by the Court.)

*Error from District Court, McClain County; R. McMillan, Judge.*

Action by A. L. McNabb against W. T. Shannon and Jesse Ingram. Judgment for plaintiff, and defendants bring error. Affirmed.

*J. W. Hocker,* for plaintiffs in error.

*J. T. Blanton, L. C. Andrews,* and *Monroe Osborn,* for defendant in error.

DUNN, J.  This case presents error from the district court of McClain county, to which, from the United States Court for the Southern District of the Indian Territory, it was transferred after statehood. Defendant in error, as plaintiff, on the 1st day of November, 1906, filed his complaint against plaintiff in error, in which he alleged that on or about the 15th day of November, 1903, he was the owner of a certain crop consisting of about forty acres of unpicked cotton, situated in a field which he had rented for that crop year; that the defendants unlawfully and without right drove or caused to be driven in the field where said cotton was situated, a large herd of cattle consisting of about five hundred head, which ate up and destroyed the said cotton, to plaintiff's damage in the sum of $500; that the said cattle also, at the same time and place, destroyed a straw stack, to his damage in the sum of $25. For answer defendants denied the allegations in the petition, and on the issue thus made the cause was sub-

mitted to a jury, which returned a verdict in favor of plaintiff and assessed his damages in the sum of $430, upon which judgment was rendered, to reverse which the cause has been duly lodged in this court.

Counsel for plaintiffs in error takes the position that, notwithstanding the fact that W. T. Shannon made the sale of the stalk fields to Ingram for the pasturage of his cattle, he was not liable herein, because he did not actively participate in the turning in of the cattle and was not the plaintiff's landlord. From the view which we take of the case, neither of these facts is of any consequence; he claimed and exercised the undisputed right to act in the sale of the stalk fields to Ingram and allowed him to turn his cattle therein, and this, in our judgment, rendered him liable equally with the party who actually turned them in. Plaintiff's crops were planted in one large enclosure, along with the stalk fields which were sold and into which Ingram was allowed to turn his cattle. Ingram's act of turning his cattle into this common enclosure with plaintiff's crops was the immediate result of Shannon's sale of the right, and allowance of the privilege, of so doing.

Sec. 1013, Stat. Ind. Ter. 1899 (Mans. Dig. § 1670), reads as follows:

"Any person who shall wilfully, directly or indirectly, turn loose any horse, mule, hog, sheep, goat or neat cattle, or any other animal or so allow any such animals to be turned loose in any enclosure where crops of any kind are growing or have been cultivated and not gathered, without the consent of all persons, or their agents, owning and cultivating such crops, shall be guilty of a misdemeanor, and, upon conviction, shall be fined not less than ten dollars nor more than one hundred dollars, this act not to be enforced for such trespass occurring after the close of the year in which the crop has been grown."

No claim is made that plaintiff gave his consent, and Shannon testified he had employed Jesse Ingram to fix a fence so that the cattle would not bother plaintiff's crops, but that for some reason Ingram did not build the fence. McNabb went to Purcell and saw Shannon in reference to turning in the cattle, and was

informed by him that he would go down and see about it. He did nothing, however, and Ingram allowed and permitted the cattle to range over plaintiff's crops, telling plaintiff that he had bought the pasture and paid for it and that he would have to look to defendant Shannon for damages; that he could not keep the stock out. Under these circumstances, as we view it, there can be no doubt about the liability of both defendants for the damages inflicted. See Cooley on Torts (3rd Ed.) pp. 145, 150.

The second proposition urged by counsel is that, even though defendants are liable to plaintiff, they should not be held in a greater sum than the cost of a fence across the field between his crop and the stalk field sold. In other words, that it was the duty of plaintiff to help minimize the loss, and that if he neglected to do this he could not recover in excess of the expense to which he would have been put. Plaintiff testified that he could have constructed a fence at a cost of $25, and this, counsel contends, is as much as he ought to be permitted to recover.

A question akin to this appears to have been considered by the Supreme Court of Michigan in the case of *Gilbert v. Kennedy,* 22 Mich..131. The trespass consisted in turning thirty-two head of cattle of defendant's upon the premises in the occupancy of Kennedy. Plaintiff averred that he was a stock seller and farmer and required and needed the sole and exclusive use of his pasture, all of which defendant knew. He averred that, by reason of the trespass, the pasture, which would otherwise have been sufficient, became insufficient and poor and unsuitable for pasturage, and that his cattle and stock depreciated, and that in other ways he was damaged. In that case, as in this, it was urged that it was his duty to have procured other pasturage, and that the damages to which he was entitled were limited by its cost. The court, in the consideration of this proposition, said:

"It is urged that a party against whom a trespass is committed has no right, by his own action or by neglecting the obvious and ordinary means of preventing or lessening the damages, to make them more than they otherwise would have been. This, as a general principle, is true. Whether it is applicable at all to the facts of the present case is only important so far as

it bears upon the duty of the plaintiff, when the defendant's cattle were wrongfully turned in, to remove his own cattle from the pasture before they should be injuriously affected by the overfeeding caused by defendant's cattle, or to prevent, at any particular time, further injury from this cause. The plaintiff in error, adopting the general rule alluded to, makes it his premises for the conclusion that such was the duty of the plaintiff; and that, not having removed his cattle when the defendant's were turned in, or as soon as he was aware of the injury therefrom to his own, he cannot recover of the defendant more than pasturage was worth, because, still basing his argument upon this assumed duty (for it has no other basis), the plaintiff should at once have obtained the necessary pasture for his cattle elsewhere; and that, therefore, the only proper rule of damages in the case is what such pasture would have been worth. Is this reasoning sound as applied to the facts of this case? As between the plaintiff and the defendant, did any such duty rest upon the former? The rule in question (if based upon the supposed duty) is simply one of good faith and fair dealing. If a man tortiously injures the roof of my dwelling, and I obstinately leave it in that condition, and, having the opportunity, refuse or neglect to repair, until the furniture and bedding in the house are injured or destroyed by the rains, I cannot recover of him for this injury to my furniture and bedding which I might have avoided by timely repairs. And if a man come to my field, where my cattle are grazing, turn them out into the street, and turn his own cattle in, thus ousting me from the possession and claiming and holding exclusive possession against me, I cannot leave my cattle in the street to starve, and then charge him with their full value, if it be practicable, by reasonable effort on my part, to procure other pasture or feed for them; but I can recover only such damages as I have suffered beyond what I might have avoided by reasonable diligence. But if he come to the same field and wrongfully turn his cattle in with mine, neither taking nor claiming any exclusive possession, and, as often as I turn his cattle out, he persists in turning them in again; till I find it impracticable to keep them out without coming to blows, and cease to attempt it, and my cattle from this cause are deprived of necessary feed, and I resort to a suit as my only remedy, which is substantially the present case, at *what particular point* in this series of tortious conduct does good faith to him require me to turn my own cattle from my own field and find pasture for them elsewhere, to save him from lia-

bility for their further injury from his repeated or continuous wrongs? Have I not a better right to insist that he shall, and to presume that he will relent and cease the continuance of his tortious acts, than he has to claim that I shall remove my cattle from my own field and leave it to him? Is it not rather his duty to cease the continuance of his wrongs, than mine to give up my acknowledged right? The damages in such a case are in no proper sense incurred by any act or negligence of mine, but by the continuance of his own tortious conduct. As to the question of duty, as well might it be said if he had repeatedly assaulted and beaten me and my family in my own house, and declared his intention of repeating the process as long as we should remain there, it would be my duty to remove myself and family from the house to avoid increasing the damages which might otherwise accrue from his further continuance or repetition of the like conduct. There was no duty resting upon the plaintiff at any time to remove his cattle and procure pasture for them elsewhere, if this could have been done. In perfect good faith the plaintiff had a right to keep his cattle there, and to hold the defendant liable for the continuous injury arising from his continuous wrong. But if the plaintiff chose to take any of his cattle out to prevent further injury, it would then, as to such cattle, become his duty to make a reasonable effort to procure other feed or pasture for them in the most prudent way he reasonably could."

This case is made the subject of sec. 90, Sutherland on Damages (3rd Ed.). To the same effect, see the annotated case of *Price v. High Shoals Mfg. Co.*, 132 Ga. 246, 64 S. E. 87, 22 L. R. A. (N. S.) 684; *Satterfield v. Rowan*, 83 Ga. 187, 9 S. E. 677; *Athens Mfg. Co. v. Rucker*, 80 Ga. 291, 4 S. E. 885.

The continuing character of the wrong which was knowingly perpetrated upon plaintiff, taken in conjunction with the wilfulness of its perpetration and considering that it was such as the law denounced as a crime, in our judgment relieved plaintiff of any duty to minimize the damages which defendants were inflicting, but entitled him to stand on his rights and hold the tortfeasors to full accountability, and this rule is especially applicable where a trespasser profits by his tort. Therefore the court did not err in refusing to give the instruction on this point requested by counsel for defendants.

We have examined the assignments of error relating to the instructions; but, taking the whole record together, we are not able to see that any prejudicial error has been committed; and, feeling convinced that the judgment is right, the same is affirmed.

All the Justices concur.