No. 40,897

JOE MACKEY, *Appellant,* v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF JOHNSON IN THE STATE OF KANSAS, sitting as the governing body of and for Indian Creek Sewer Sub-District No. 1 of said county, *Appellee.*

(341 P. 2d 1050)

Opinion filed July 10, 1959.

*Elmer Hoge,* of Overland Park, argued the cause and was on the briefs for appellant.

*Clark Kuppinger,* of Kansas City, Missouri, and *John W. Breyfogle, Jr.,* of Olathe, argued the cause and were on the briefs for appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an action for damages which was alleged and tried on the theory of *trespass*. From a verdict and judgment for the defendant on all six counts the plaintiff has duly perfected his appeal to this court.

The twenty-eight specifications of error assigned by the plaintiff concern trial errors consisting of rulings upon the admissibility of evidence, instructions given and refused, and argument by counsel before the jury.

The following statement of facts taken from the evidence presented in the record will serve as a basis for further discussion.

The Board of County Commissioners of Johnson County, Kansas, is the governing body of Indian Creek Sewer Subdistrict No. 1, a public sewer district duly organized under the laws of the State of Kansas. It is located within Johnson County. The Teis Construction Company, Inc., is a Kansas corporation, and was hired by said sewer district to construct underground sanitary sewer lines within the district.

Earl T. Porter and his brother, Audley W. Porter, are owners of property situated in the sewer district and located at the southwest corner of 91st and Antioch Road, containing approximately eighty acres. They also own an additional forty acres north of 91st Street.

The plaintiff, Joe Mackey (appellant), rented the above two tracts of land owned by the Porters early in the year 1955, under a verbal lease which Earl T. Porter testified was by the year, but which the plaintiff testified was for an indefinite duration—that he could remain upon the premises as long as he wanted to until development of houses was started on the property. The plaintiff operates a dairy on the premises and is also engaged in the buying and selling of dairy cattle.

Sometime in 1955, before construction of sewers started on the land in question, the Porters orally granted to the sewer district an easement to construct sewers on said land. This oral conveyance was later confirmed by written instrument dated April 26, 1956. *The plaintiff was not notified of said grant to the sewer district prior to the actual entry upon the property by the contractor, Teis Construction Company, Inc.*

The contractor entered upon said land on a Wednesday, October 19, 1955. In three days he had dug a trench, laid the sewer pipe and

then backfilled the trench to a point near the southwest gate of a barn lot of plaintiff's on the eighty-acre tract in question. Part of the ditch and a manhole excavation near this gate were open on Friday evening, October 21, when the contractor and his employees quit work.

Plaintiff's employee, George Kueck, did general farm work for the plaintiff on these premises. It was his duty to attend the cows and feed them, and on the evening in question he drove some of the plaintiff's dairy cattle past this excavation and through the southwest gate of the barn lot. His testimony was that there were no barricades around the excavations.

The plaintiff was absent in Minnesota purchasing cattle when the contractor entered upon the premises on October 19th and did not return home until after dark on Friday, October 21st. That same evening, between the hours of 10:00 and 11:00 p. m., there arrived at plaintiff's leased premises, by truck from Minnesota, nineteen head of Holstein cows, which he had purchased on the trip to Minnesota. The plaintiff's manager, Bob Gifford, Jr., and plaintiff's employee, George Kueck, were present and aided the plaintiff in the unloading of the cows. These two men were aware that the southwest gate of the barn lot was open and that there were open excavations immediately adjacent or near the gate which they testified were without barricades. George Kueck testified that he did not tell the plaintiff about the ditch or the excavation near the gate because he was afraid the plaintiff would make him fence them.

The plaintiff testified that at the time the Minnesota cattle were unloaded on the evening of October 21, they were examined and found to be in sound condition. On Saturday morning, October 22, when plaintiff arrived at his leased premises, at about 8:00 a. m., he found that his cattle had been injured. Four cows were down and could not get up. The plaintiff testified that two were near the barn and two were down near the ditch. The remainder of the nineteen head were bruised and appeared to be stiff and sore. They were scattered out over the pasture. There were none in the sewer ditch or manhole excavation.

The plaintiff's witness, Dr. Twiehaus, a veterinarian, testified that the injuries consisted of muscle bruises, open wounds that had gotten infected and bone injuries. The four cows that were down had pelvic injuries, displacement of the hip joint and the like. These pelvic injuries, according to his testimony, were due to some violent

accident because it would be very unusual for cattle to hurt themselves in a pasture like these were hurt. "It could have come from a fall." He recommended that the four cows which were down be destroyed. On cross examination he testified that the injuries occurred from twelve to eighteen hours before he saw the cattle. Four cows, other than those he directed to be destroyed, had premature calves born thirty-six to forty-eight hours after he had treated the cattle. He testified that the injuries could have occurred by reason of the cattle falling into a pit, and in his opinion that was the only way the injuries could have been sustained; that in his opinion the injuries could not have been sustained in shipment. He further testified a cow after receiving a pelvic or hip injury, as four of these cows sustained, would not be able to walk and would not be able to crawl out of a hole or pit ten feet in diameter and between seven to nine feet in depth, unless there would be some gradual incline.

The plaintiff admitted there was a dry stream bed in the pasture with banks five and one-half to six feet high. The plaintiff testified he hired a tow truck to move the two cows that were down near the ditch to the barn. When the driver of the tow truck was called to testify he stated that there was only one cow down, and it was down in the south end of the pasture and was not near any ditch or sewer. He stated that this cow had just given birth to a dead calf and that he did not see any ditch or sewer on the premises.

The contractor on Thursday, October 20, accidentally cut a water line on the premises which ran between the water well and the electric water pump, a distance of approximately two hundred feet. This water line was repaired by the contractor on the same day. Beginning on November 17, 1955, and thereafter, plaintiff had to call a plumber to repair the water pump in question which pumped the water from the well for the cattle. The plumber was called on numerous occasions thereafter but the plumber testified that he never could exactly find the trouble with the pump other than it continually lost its prime. He did not know what caused the pump to lose its prime. The plaintiff's evidence was that the well which supplied water for the premises after the sewer line was put in would not supply sufficient quantities of water for his needs, although it had done so before. No explanation appears in the record as to why this well would not supply sufficient water other than

the fact that it was admitted by the plaintiff that 1955 was a dry year. Because of the lack of water, the plaintiff was forced to buy water thereafter for his cattle.

On June 11, 1956, the plaintiff's cattle escaped from his pasture and damaged sweet corn grown in a neighbor's garden. In settlement the plaintiff paid the neighbor $25 for this damage. Some men were said to have taken the fence down on the south line of the property which allowed the cows to escape from the pasture. (Plaintiff's manager said the gate was left open.) These men were never identified by the evidence but were said by the plaintiff to have done some work on the sewer line on June 8, 1956.

The excavation for the manhole located at the southwest corner of plaintiff's barn lot remained open for approximately three weeks. Because of this opening plaintiff kept his cattle in the barn lot and fed them for this period. The plaintiff had on hand during this time a daily average of sixty head of cattle and testified it cost him an average of $1.00 per head per day to feed them.

The plaintiff sued asking damages in six counts as follows: (1) For injuries suffered by his cattle falling into the excavation dug by the defendant on the premises in question without plaintiff's permission in the sum of $3,200; (2) for veterinarian expenses in treating said cattle in the sum of $1,000; (3) for the cost of purchasing water because of damage to the water well in the sum of $1,000; (4) for expense of repairing damage to the water pump in the sum of $350; (5) for the cost of feeding his cattle while the defendant was working in plaintiff's pasture for a period of twenty days in the sum of $1,200; and (6) for the cost of reimbursing his neighbor for damage to crops caused by the escape of plaintiff's cattle from his pasture in the sum of $25; and for costs.

It was admitted at the trial the defendant had no easement from the plaintiff across these premises at the time the sewer line was laid and that the Teis Construction Company was its contractor and built the sewer line pursuant to a contract with the defendant.

The jury returned a verdict in favor of the defendant (appellee herein) and against the plaintiff (appellant herein) on each count. Judgment was entered by the trial court upon the verdict awarding defendant costs.

As a preliminary to further discussion it must be noted the action in the instant case is not for damages by reason of the failure of the County Commissioners to condemn an easement across the

premises in which the plaintiff had a leasehold interest. The action is strictly one for damages by reason of trespass and was presented in the trial court upon the theory that a trespass had been committed. No further discussion will therefore appear in this opinion concerning the rights of the defendant to enter upon the premises for the purpose of constructing the sewer line in question. We shall proceed on the assumption that a trespass was committed on the premises insofar as the plaintiff herein is concerned.

Ordinarily this would entitle the plaintiff to nominal damages in the absence of proof of actual damages, but counsel for the plaintiff concedes in argument that the plaintiff is not pressing for reversal on the ground that he should have been awarded nominal damages. Counsel for plaintiff concedes unless sufficient error is shown by the record concerning actual damages to warrant a reversal the judgment should be affirmed.

The defendant by its answer interposed a general denial and affirmatively alleged, among other things, that the injury or damage sustained by the plaintiff was the direct and proximate result of the negligence or willful disregard of the plaintiff, or his agents, to take ordinary prudent care to prevent injuries to his livestock under the circumstances.

The trial court instructed the jury with respect to the burden of proof cast upon the plaintiff among other general instructions, and specifically instructed as follows:

### "INSTRUCTION No. 7

"This is an action based upon trespass by the defendant through its agent, Teis Construction Company, Inc., a corporation, for alleged damages resulting from the construction of a sewer line across the premises occupied by the plaintiff without authority given by the plaintiff to either Teis Construction Company, Inc., or its principal, the defendant.

"Before the plaintiff is entitled to recover from the defendant you must find that the construction company entered upon the premises occupied by the plaintiff without actual authority from the plaintiff *and that the damages sustained by the plaintiff were the natural and proximate result of the trespass by Teis Construction Company, Inc., as agent of the defendant.*

### "INSTRUCTION No. 8

"You are instructed that proximate result as used in these instructions is that result which in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury and damage complained of by the plaintiff and without which the injury and damage would not have resulted; in other words, the injury to be the proximate result of the trespass must be the natural and probable consequences of the wrongful act. *Natural and probable consequences are those which human foresight can anticipate from the wrongful act.*

## "Instruction No. 9

"You are instructed that one who is damaged by the wrong of another should take such action *to mitigate his damages as was reasonably possible under the circumstances,* and if you find that the defendant did commit a trespass against plaintiff by coming on his property without his permission and digging the sewer ditch and manholes in evidence, then you shall take into consideration what appropriate measures were reasonably available to him under the circumstances to have protected his cattle, utilized his pastures, repaired his fences *and in herding the cattle for the necessary period of construction.*

"If you find plaintiff is entitled to recover under any of the counts of his petition and that any such measures to mitigate damages as above referred to were reasonably possible under the circumstances thereof, plaintiff's recovery shall be limited to the cost in time and labor of such measures.

## "Instruction No. 10

"You are hereby instructed that *knowledge obtained by an agent within the scope of his authority as such agent, is in law the knowledge of the principal,* and wherever you may be required to find in this case that any party had knowledge of the existence of any fact, if you find from the evidence that said party's duly authorized agent had such knowledge, then it is your duty to find that the party for whom said agent acted also had knowledge of that fact.

## "Instruction No. 11

"If you find that the defendant as principal of Teis Construction Company, Inc., did enter upon the premises occupied by the plaintiff without having secured from the plaintiff authority so to do and that as a natural and proximate result of said entry upon the premises occupied by the plaintiff the plaintiff sustained injuries and damages, then you shall return a verdict for the plaintiff for either the damages or mitigated damages, if any, which the plaintiff sustained on each count in a sum not to exceed the limit sought as set forth in Instruction No. 1. *Unless you find for the plaintiff on all of the above necessary elements then you shall return a verdict for the defendant."* (Emphasis added.)

While counsel for the plaintiff did not object to Instruction No. 7, he did object to the last sentence in Instruction No. 8 and to Instructions numbered 9, 10 and 11.

Upon all the facts, conditions and circumstances presented by the record in the instant case the foregoing instructions (Nos. 7 to 11, incl.) were properly given to the jury.

The argument advanced by the plaintiff is that the last sentence in Instruction No. 8 tends to cut down the damages for which a trespasser is liable. He argues a trespasser is liable for all damages arising out of his trespass regardless of whether human foresight may have anticipated the same as a result of the wrongful act. The plaintiff, however, in his brief has quoted the proposition of law applicable to this case on the point in question in the following manner:

". . . Such liability extends not only to injuries which are directly and immediately caused by his act but also to such immediate consequential injuries as, *according to the common experience of men, are likely to, and do in fact, result from such act.* . . ." (Emphasis added.)

For the above proposition 15 Am. Jur., Damages, § 66, pp. 471, 472, is cited. We fail to perceive any substantial difference in the law quoted and the instruction given.

In an action of trespass damages may be awarded for injury to a business which are the immediate consequence of the trespass. The wrongdoer should compensate for all the injury naturally and fairly resulting from his wrong. (*K. P. Rly. Co. v. Mihlman,* 17 Kan. 224.) In the instant case the appellee entered upon the premises in question under a claim of right and in good faith. Under such circumstances exemplary damages will not usually be allowed and the plaintiff here is making no claim for exemplary damages. Upon all the facts, conditions and circumstances presented by the instant case it cannot be said the trial court erred in giving Instruction No. 8.

Plaintiff's objection to Instruction No. 9 is that it makes it incumbent upon a victim of trespass to mitigate his damages. It is argued that a victim of trespass, unless he deliberately endeavors to bring about the injuries willfully, is not compelled to take any action to relieve the trespasser of the consequences of his unlawful trespass.

It should be noted that Instruction No. 9 does not relate to mitigation of damages by the defendant but to damages which could be prevented by the plaintiff. A person suffering from the trespass of another is bound, as far as he reasonably can, to reduce his damages, and he is required to exercise the diligence of an ordinarily prudent man in order to do so. Hence, a plaintiff cannot recover damages resulting from his own failure to employ the ordinary and obvious means necessary to prevent the injury. The rule excluding a recovery in case the consequences were avoidable only requires that the plaintiff should exercise good faith and fair dealing. (87 C. J. S., Trespass, § 111, pp. 1065, 1066.)

In *K. P. Rly. Co. v. Mihlman,* supra, the court said:

". . . The proposition is sound, that while a wrongdoer should compensate for all the injury naturally and fairly resulting from his wrong, yet the party upon whom the wrong is done should take reasonable care of his property, and make reasonable effort to prevent any extension of the injury. If a party can with reasonable effort prevent an injury from spreading, he ought to do it. It is no more than simple justice to the party who has caused the

injury, especially if that party has acted without malice, and without a thought of causing injury. . . ." (p. 234.)

The foregoing rule was later affirmed in *Fritz v. Western Light and Power Corp.*, 140 Kan. 250, 36 P. 2d 90, also a case involving trespass. (See also *Shannon et al. v. McNabb*, 29 Okla. 829, 120 Pac. 268.) Instruction No. 9 was properly given to the jury.

The *defendant's evidence* in the instant case disclosed that its servants and agents took immediate steps to protect the plaintiff by having the excavations either backfilled or barricaded so that the plaintiff would be free to pasture his cattle, and the broken water line was immediately repaired on the day it was encountered. The plaintiff's evidence established that he did nothing but sit back and increase his damages. If the excavation for the manhole was not barricaded, as he alleged and as some of plaintiff's evidence indicated, a fence could easily have been erected with materials on hand according to the testimony of his employee, George Kueck. The plaintiff's evidence further disclosed that he had *other cattle* which his foreman had placed in another lot on the evening of the 21st of October, due to the sewer ditch across the pasture. Yet these cattle from Minnesota, strange to the plaintiff's lot and pasture, were driven in the dark of night through the dangerous gate where the sewer ditch and manhole excavation were located into the pasture where there was a dry stream bed located with steep banks approximately as deep as those of the excavation.

The duty imposed upon a plaintiff to mitigate damages *where a trespass is known to exist* should not be confused with a plaintiff's negligent conduct in failure to discover the trespass, which may not be shown in mitigation of damages. (*Fox v. Turner*, 85 Kan. 146, 116 Pac. 233; and *Green v. Turner*, 85 Kan. 877, 116 Pac. 234.)

The appellant specifically objects to the words "herding the cattle for the necessary period of construction" set forth in Instruction No. 9. It is argued there was no evidence offered by the defendant as to where the cattle could have been herded. This objection has no merit. There was much evidence in the record to which counsel for the defendant repeatedly objected without success concerning the pro and con of pasturing alfalfa with dairy cattle, all of which was permitted to go to the jury for its ultimate determination. There was also testimony by the plaintiff and his foreman that the pasture on the eighty-acre tract in question had sufficient bluegrass to pasture the cattle, although a mathematical calculation discloses that after ten acres, comprising the farmstead and barn lot, and

thirty-five acres of alfalfa at the west end of the eighty-acre tract in question are deducted, there remains but thirty-five acres of grass near the end of a grazing season, described as "dry," upon which to pasture an average of sixty head of dairy cattle. These matters were all before the jury and no doubt had a considerable effect upon the jury in determining the weight and credit to be given the testimony of the plaintiff and his foreman as to whether the feeding of plaintiff's cattle in the dry lot was a direct consequence of the trespass. There was also evidence the forty-acre tract north of 91st Street leased by the plaintiff had brome grass which had been used for pasturing plaintiff's cattle. This was not pastured after the trespass, and it had no sewer ditch or other excavation upon it.

Objection was made to Instruction No. 10, that knowledge to the agent is knowledge to the principal. It is contended by the plaintiff that no evidence of any agency was introduced on the part of the plaintiff's employees being agents within the scope of the matters involved; and that there has been no plea of agency.

It has long been the law of this state that the defendant need not plead specifically the fact that there existed a principal-agent relationship between the plaintiff and his employees. (*Bice v. Nelson,* 105 Kan. 23, 180 Pac. 206.) Moreover, the defendant did more than make a general denial in his answer. He alleged that the injuries complained of were the result of the failure of the plaintiff, his agents, employees and servants to take ordinary prudent care of his cattle; that plaintiff, his agents, employees and servants knew of the defendant's entry and the purpose thereof; and that the plaintiff's own carelessness and negligence in failing to reasonably care for said cattle under the circumstances, known to the plaintiff to be then and there existing, was the direct and proximate cause of plaintiff's loss and injury. Instruction No. 10 was therefore properly given to the jury.

While the evidence did not disclose that the plaintiff himself knew of the trespass at the time he unloaded the cattle from Minnesota, his foreman and also his employee, George Kueck, knew of the excavation for the sewer ditch and manhole in the pasture and near the gate where the plaintiff's cattle were pastured. This knowledge on their part was definitely within the scope of their employment and the jury would be justified in finding from the evidence that they were the agents of the plaintiff and their knowledge was equivalent to knowledge on the part of the plaintiff.

·The plaintiff objects to the last sentence of Instruction No. 11— "Unless you find for the plaintiff on all of the above necessary elements then you shall return a verdict for the defendant." It is argued this leaves the jury with the impression that if the plaintiff had not sustained the full amount of damages alleged—that the plaintiff had sustained only a partial damage—they would still have to find for the defendant. This is untenable. The instruction is clear, precise and not misleading. It must be assumed that a jury is reasonably intelligent.

The plaintiff requested the trial court to give a number of special instructions which it refused. Some of these instructions became immaterial upon the issues ultimately submitted to the jury and the others were given to the jury in substance. The trial court gave all the instructions necessary to furnish guidance to the jury in their deliberations and to aid them in arriving at a proper verdict. The refusal to give a requested instruction even though it states the law correctly, does not constitute either error or reversible error if it is substantially covered by the instructions given, or if everything in the requested instruction which the party is entitled to have given has already been given by the court in other instructions. Thus, it is not error to refuse special instructions, where the general instructions are sufficiently broad to enable the jury fully to understand the law of the case. (53 Am. Jur., Trial, § 527, p. 424; *Wilson v. Walt,* 138 Kan. 205, 25 P. 2d 343, 89 A. L. R. 473; and *Hayes v. Nutter,* 98 Kan. 75, 157 Pac. 428, 2 A. L. R. 365.)

The trial court submitted two verdict forms to the jury. The jury by mistake completed both verdict forms and returned them into court. The one form indicated that the jury had found for the defendant on each count of the petition. The other, intended as a verdict form should the plaintiff be entitled to recover, was worded so that the jury was required to fill in the amount which the plaintiff was entitled to recover on each of the six counts. In each of these six blank spaces was written the word "None." The verdict which the jury returned was clearly apparent from both forms. The plaintiff's objection has no merit. So long as the verdict manifests the intention and findings of the jury upon the issues submitted to them, it will not be overthrown merely because of defects in form. (53 Am. Jur., Trial, § 1035, pp. 715, 716; and 89 C. J. S., Trial, § 496, p. 157.)

The trial court excluded evidence offered by the plaintiff whereby

he attempted to prove his damages by introducing bills for water purchased for the farm after the date he brought this lawsuit. He also attempted to introduce testimony with respect to the value of the water well to the farm. Objections to this evidence were properly sustained. The plaintiff's interest in the land here in question was that of a lessee. He therefore could not recover for any injury to the land itself, except so far as it may have affected the value of the use of the land for the term for which he had it leased. The measure of recovery in such instance would be the difference between the rental value of the land immediately before and immediately after the injury complained of. (*Elliott v. Railway Co.*, 8 Kan. App. 191, 55 Pac. 490.) This was not the theory upon which the plaintiff sought recovery by his petition.

The trial court excluded testimony of Dr. Twiehaus, a veterinarian, which related to the charges made for treating cattle of the plaintiff. The ruling on this point is assigned as error. The only portion of the record of trial certified to this court which could possibly relate to this point is the following: "He did not have with him a record of his charges. (At this point, the Court directed the witness to return in the morning with his record as to his charges.)" This is insufficient to acquaint the court with the question presented for review. Counsel for both parties are generous in their respective briefs to supply facts favorable to their position, but this is not a compliance with Rule No. 5 of the Supreme Court which provides in part: *"In appealed cases the appellant shall print an abstract of the record which shall reproduce such portions thereof as it is necessary to read and in order to arrive at a full understanding of the questions presented for review, so that no examination of the record itself need be made for that purpose . . . "* (Emphasis added.)

Counsel for the plaintiff informs the court in his brief that *his* witness, Dr. Twiehaus, returned the next morning but failed to bring his records and the trial court refused to permit the witness to testify concerning an estimate of the charges made for treating plaintiff's injured cattle. Counsel for the defendant state in their brief the witness testified that even with these records he could not identify his charges which relate to the cattle purchased in Minnesota and claimed by the plaintiff to have been injured. Even if the question were properly here, under the circumstances plaintiff would be in no position to take advantage of his failure to use the

power of subpoena to produce *his* evidence, and a refusal of the trial court to grant the plaintiff a continuance of the case after the second appearance of the witness was properly within the trial court's power of discretion.

It is contended the trial court erred by admitting the diary and the diagram of the defendant's witness, Andy Waldrop, to the jury room. Waldrop was a building inspector employed by Black and Veatch, consulting engineers, and in the fall of 1955 was assigned the duty of inspecting sewer lines in the Indian Creek project in Johnson County. As an inspector he oversaw the laying of the pipe across the premises in question. He kept a daily diary which was admitted into evidence as defendant's Exhibit "A" with respect to the dates upon which the sewer ditch was dug upon the premises in question. Complaint is made that the entire diary was permitted to go to the jury room without any admonition that it be restricted to the days in question. The nature of the entries disclosed that on Wednesday, October 19th, they dug about 124 feet of sewer ditch on the property which the plaintiff had leased; on the 20th the contractor dug 251 feet and there were eighty-four joints of pipe laid; and on Friday, the 21st, the contractor dug 275 feet, the ditch was approximately seven feet deep, and there were ninety-two joints of pipe laid that day. The nature of other entries is not disclosed. It does not affirmatively appear from the record that the plantiff was prejudiced in any way by permitting the entire diary to go into the jury room.

Waldrop also prepared a diagram from which he testified. Subsequent to his testimony other witnesses for the defendant used this diagram and plaintiff's counsel referred to the diagram on numerous occasions in the cross examination of the defendant's witnesses. He also referred to it repeatedly in his closing argument to the jury. This diagram was not admitted into evidence but was permitted to go to the jury room over objection by counsel for the plaintiff. For all practical purposes this diagram was introduced in evidence and the objection is regarded as hypercritical. This diagram became a necessary part of the witnesses' testimony, to go to the jury as such. It was not used as independent testimony but only to explain the testimony of the witness. It could have been formally introduced in evidence. The diagram so used was only to show what the witness testified to, and would not corroborate the testimony in the least. It was made to illustrate or

explain his oral evidence. The use of the diagram in this way was proper and the fact that the trial court permitted it to be taken into the jury room is not shown to have prejudiced the plaintiff in any way. (See *Hilker v. Agricultural Bond & Credit Corporation* [Tex. Civ. App.], 96 S. W. 2d 544; *Blazinski v. Perkins*, 77 Wis. 9, 45 N. W. 947; and *Cudahy Packing Co. v. Skoumal*, 125 Fed. 470.)

The plaintiff contends the jury verdict is contrary to law and the evidence of the case and that the court erred in overruling his motion for a new trial. There is no dispute that the plaintiff's cattle had been injured in some manner. The plaintiff introduced evidence attempting to prove that the cattle were injured by falls into the excavation dug by the defendant and in coming into contact with the machinery of the defendant. The defendant's witnesses all testified that there were no signs of cattle falling into the excavation. They said that the excavation was barricaded and that there was room for the cattle to go by the excavation from the southwest gate into the pasture. Throughout the discussion above numerous glaring defects in the plaintiff's evidence were noted. Precisely what the jury found with respect to the evidence in the case is not disclosed by the record. No special questions were submitted to them for answer. It may be fairly said from the evidence presented in the record the jury would be justified in finding that no grass remained at the end of a dry grazing season for the plaintiff's cattle to pasture, and therefore plaintiff had no need for use of the pasture through which the sewer ditch was dug at the time his cattle were injured. Under these conditions the cost of feeding the cattle would not be attributable to the trespass. The plaintiff, having full knowledge of the trespass through his agents, was bound to mitigate damages by keeping his cattle away from the excavations. Had he done so there would have been no injury to the cattle and no veterinarian expenses attributable to the trespass. Likewise, it was within the evidence for the jury to find that the difficulty with the water supply on the premises was not attributable to the trespass, but to the dry season.

Other specifications of error not specifically treated in this opinion have been fully considered and rejected. Some have become immaterial by reason of the disposition made of other points of law fully considered herein. Others are so trivial as to warrant no mention, and even though technical errors may have been committed, they do not affirmatively appear to have prejudicially af-

fected the substantial rights of the plaintiff. Upon the whole record it appears that substantial justice has been done by the judgment of the trial court. (G. S. 1949, 60-3317.)

The judgment of the trial court is affirmed.

ROBB, J., concurs in the result.