LUISA ESPÓSITO AVILÉS, Petitioner and Appellant, *v.* MARÍA GUZMÁN ACOSTA DE ESPÓSITO, Respondent and Appellee.

No. 6148. Argued June 20, 1933.—Decided November 29, 1933.

*García Méndez & García Méndez* for appellant. *Arturo Reichard* for appellee.

Mr. Chief Justice Del Toro delivered the opinion of the Court.

Luis Espósito Avilés had insured his life with "El Ancora," an insurance company of this island. He failed to designate specifically any beneficiary and in such case, according to the regulations of the company, the policy became payable to his heirs. He died intestate, and the court declared as his sole and universal heirs his sisters Luisa, Juana Cruz, and Ana Dominga Espósito Avilés, and his widow, María Guzmán Acosta, who failed to agree regarding the distribution of the proceeds of the policy. The widow claimed that it was a case of community property and therefore only one-half thereof could be allotted to the heirs, and the sisters maintained that the whole of the proceeds should be distributed in conformity with the law applicable to cases of intestate succession.

The case was submitted to the court, which first found for the sisters and later, on reconsideration, for the widow. The sisters have appealed to this court.

This is not the first time that the question involved comes before this court. In 1921 a decision was rendered in an

appeal brought by Mrs. Quintiliano Cádiz, a widow, who maintained that a policy left by her husband for the benefit of his children was community property. This court held that it was not, and in the course of its opinion it said:

"The appellant has raised several questions which are unimportant. The really fundamental question is whether or not the $1,000 from the insurance policy should be considered as community property.

"In support of an affirmative opinion the appellant cites no applicable statute or jurisprudence, but only invokes the opinion of commentator Manresa, as follows:

" 'Should the sum paid by an insurance company upon the death of the insured be considered as community property? This question had been discussed in France from the standpoint of whether it should be considered as personal property. It is clear that many of the arguments there adduced pro and con are of no weight in our country because of the great difference in the legal systems governing the relations between husband and wife.

" 'Of course, the principal of the insurance substitutes the premiums that must be paid and the right to the former vests from the moment of the contract, since from that time the power to dispose of it exists, and if the insured dies, payment may be demanded. It is, therefore, an acquisition for a valuable consideration made during wedlock, although the time stipulated for performance of the obligation is when the death of one of the spouses occurs, which occurrence extinguishes the partnership. The question being considered in that light, it may be said to be settled by articles 1396 and 1401. If the premiums are paid with the separate funds of the husband or the wife, the principal of the insurance is his or her separate property, but if they are paid from the common funds, or the source of the money can not be established, the acquisition is community property.' 9 Manresa, Spanish Civil Code, 2nd ed., 589.

"This court has great respect for the opinion of the wise Spanish jurist, and it must be admitted also that it is logical on the particular point discussed, but if the question is studied more deeply, it will be seen that the opinion is in conflict with articles 416 and 428 of the Code of Commerce, by which code life insurance, as a mercantile contract, is governed.

"Article 428 expressly provides that the amounts which the insurer must deliver to the person insured, in fulfillment of the contract, shall be the property of the latter, even against the claims of the legitimate heirs or creditors of any kind whatsoever of the person who effected the insurance in favor of the former." *Cádiz* v. *Jiménez*, 30 P.R.R. 35, 36.

In support of its contrary view the district court, apart from its reasons—which are indeed ably stated—only cites the opinion of Manresa which this court, while admitting its weight, refused to follow in the *Cádiz* case, *supra*.

The appellee in her brief confines herself to the contention that the *Cádiz* case, *supra*, differs from the case at bar in that in the former there was a beneficiary while in the latter there is none, and that no application can be made to the instant case of section 428 of the Code of Commerce. Her argument concludes thus:

"In the furtherance of justice, and bearing in mind that section 428 of the Code of Commerce is silent as to who should receive the proceeds of an insurance policy where no beneficiary is designated, and that the universal jurisprudence is that in similar cases if the premiums have been paid with separate funds the insurance money is separate property, but it is community property where the premiums were paid with funds of the conjugal partnership, it should be held that the proceeds of the insurance policy of Luis Espósito Avilés form part of the assets of the latter's estate (38 L.R.A. (N.S.) 246), and constitute community property if the right was acquired with community funds, according to the opinion of the learned commentator Manresa."

The citation from L.R.A. is erroneous. Upon consulting it we have found the case of *Shannon* v. *McNabb*, from the Supreme Court of Oklahoma, 29 Okla. 829, which deals with damages and is not at all in point with the instant case.

Although it is true that the case at bar may be distinguished from the *Cádiz* case, *supra*, in that in.the latter it was specified that the children were the beneficiaries, we do not think that it could be contended that in the present case there are no beneficiaries. As we have already said when

stating the facts, since no beneficiaries were designated by the insured, his heirs must be considered as the beneficiaries according to the regulations of the insurance company. And this court, in *Schlüter* v. *Heirs of Díaz*, 41 P.R.R. 875, 877, although its attention was focused on a different essential question—the construction of the amendment made to subdivision 9 of section 249 of the Code of Civil Procedure by Act No. 35 of 1928 (Session Laws, p. 224)—expressed itself as follows:

"At the time of the amendment, the case of a policy payable to the heirs had been fully covered by article 428 of the Code of Commerce. See *Del Val* v. *Del Val*, 29 Phil. 534."

Led by the citation, we have studied the Philippine case. There, in the course of the opinion, it was said:

"With the finding of the trial court that the proceeds of the life-insurance policy belong exclusively to the defendant as his individual and separate property, we agree. That the proceeds of an insurance policy belongs exclusively to the beneficiary and not to the estate of the person whose life was insured, and that such proceeds are the separate and individual property of the beneficiary, and not of the heirs of the person whose life was insured, is the doctrine in America. We believe that the same doctrine obtains in these Islands by virtue of section 428 of the Code of Commerce which reads:

" 'The amounts which the underwriter must deliver to the person insured, in fulfillment of the contract, shall be the property of the latter, even against the claims of the legitimate heirs or creditors of any kind whatsoever of the person who effected the insurance in favor of the former.'

"It is claimed by the attorney for the plaintiffs that the section just quoted is subordinated to the provisions of the Civil Code as found in article 1035. This article reads:

" 'An heir by force of law surviving with others of the same character to a succession must bring into the hereditary estate the property or securities he may have received from the deceased during the life of the same, by way of dowry, gift, or for any good consideration, in order to compute it in fixing the legal portions and in the account of the division.'

: ''Counsel also claims that the proceeds of the insurance policy were a donation or gift made by the father during his lifetime to the defendant and that, as such, its ultimate destination is determined by those provisions of the Civil Code which relate to donations, especially article 819. This article provides that 'gifts made to children which are not betterments shall be considered as part of their legal portion.'

''We cannot agree with these contentions. The contract of life insurance is a special contract and the destination of the proceeds thereof is determined by special laws which deal exclusively with that subject. The Civil Code has no provisions which relate directly and specifically to life-insurance contracts or to the destination of life insurance proceeds. That subject is regulated exclusively by the Code of Commerce which provides for the terms of the contract, the relations of the parties and the destination of the proceeds of the policy.'' *Del Val* v. *Del Val,* 29 Phil. 534, 540–541.

Romero y Girón, on page 304 of his Code of Commerce, in referring to life insurance, says among other things as follows:

''This most important contract derives from the ancient life annuity, greatly developed in modern times as a result of the diverse, ingenious, and prolific combinations which have arisen under the simultaneous influence of the spirit of foresight and the desire for profit. . . . . . . . . . .

''      *      *      *      *      *      *      *

''. . . . irrespective of the aims of the parties to the contract and the terms which they may stipulate, four essential elements or requisites must concur in order to render the contract valid, to wit: The existence of a person whose life can be insured; the value of the risk fixed beforehand; a beneficiary; and delivery of a premium or money as the consideration of the insurance.

''Starting from the above essential elements, the project declares as valid all the terms that might be agreed stipulating the delivery of premiums or money in exchange for the enjoyment of a life annuity; delivery of funds, upon the death of the insured, to his heirs or to a third person, or any other similar provision, for one or more lives, without excluding age, sex, or state of health. . . . . . .

''      *      *      *      *      *      *      *

''This contract presents, moreover, the peculiarity that the insurance might be constituted in favor of a third person, even without

his consent, which is perfectly licit, because in this way persons of generous disposition may perform deeds of charity in favor of members of families of moderate means, honest and industrious, without in the least hurting their feelings or price by furnishing them with funds or rents upon the death of the person who with his toil provides for the support of all.''

From the research we have made in connection with life insurance contracts, it appears that they are subject to regulation and are exclusively governed by the provisions of the Code of Commerce, and their clauses must be enforced as the same appear in the policy issued. There is always a beneficiary, who is the person entitled to the exclusive enjoyment of the amount stated in the policy, taken in his favor by the insured, irrespective of the source of the funds with which the premiums are paid. If in the present case Avilés had taken the policy exclusively in favor of his widow, would the sisters be entitled to claim anything? Certainly not. The widow would have been entitled to the whole sum. Likewise, if it had been taken out exclusively in favor of one of his sisters, she alone would have been entitled to the insurance proceeds, and neither his widow nor any of his other sisters could have claimed any share thereof. And this is because the proper rule to be applied is that the proceeds of the policy do not belong to the estate of the decedent but to the beneficiary of the policy.

It is clear that where the heirs are the beneficiaries, the proceeds are distributed among them in accordance with the law; but in such case the procedure to be followed is exactly the same as in other cases; and if in the other cases the proceeds have not the character of community property even though the insured be a married person, they can not have it either where his heirs are concerned.

The solution appears to be at variance with the essential purpose underlying the conjugal partnership, namely, the distribution in equal shares between the spouses of every property acquired for a valuable consideration during the

marriage; because if the insurance premiums are paid with community funds, the proceeds of the policy when due should also be considered as community property. But it was not so ordained by the lawmakers when they authorized the execution of this special contract free from any restrictions whatsoever—unless, of course, a fraudulent purpose be shown to exist in contravention of the law itself.

Moreover, from a slight consideration of human nature it will be seen that it is impossible to guarantee a precisely equal distribution from the start and that there is less risk of an uneven distribution of the ganancial property in consequence of the maintenance of an insurance policy by either spouse, than is generally the case by reason of the individual expenditures of the spouses. How often a case is met where the wife lives poorly in the home while the husband spends considerable sums in leading a disorderly or immoral life, and how many times it is the husband whose life is wholly absorbed by his work while his wife wastes a fortune on dresses, automobiles, or parties! To be sure, the sums spent in either case by one of the spouses will greatly exceed any amount that can be invested on life insurance. The difference consists in that nothing will remain of the sums disorderly or viciously spent, whereas of the insurance investment there will remain the proceeds of the policy after the death of the insured.

Really, after everything is considered, it must be concluded that there is no injustice but rather the contrary, as the conjugal partnership is benefited thereby, since the keeping of an insurance encourages thrift and the development of a sense of responsibility towards those united to the insured by the ties of blood or love which contribute so much to the welfare and security of the home.

Although not entirely applicable, since it was not laid down having in mind the conjugal partnership, we will quote, by way of illustration, from the jurisprudence established by the

American courts in cases of insurance policies payable "to the heirs" of the insured.

The following is from a note to the case of *Hubbard, Price & Co.* v. *Turner et al.*, in 30 L.R.A. 593, 595:

"The above decision in the case of *Hubbard, P. & Co.* v. *Turner* is fully sustained by the prior decisions on the subject.

"The person who would take intestate personal property under the statutes will be entitled to the proceeds of insurance payable to the 'heirs at law' of the insured, and the proceeds will not go to his estate. *Mullen* v. *Reed,* 64 Conn. 240, 24 L.R.A. 664.

"The word 'heirs,' designating those to whom insurance shall be paid in case there is no will, is held, in *Northwestern Masonic Aid Asso.* v. *Jones,* 154 Pa. 99, to mean the legal heirs designated by the statute of distributions to the exclusion of the executor and creditors of the estate.

"The word 'heirs' in a certificate of life insurance, where there is no context to explain it, means those who would, under the statutes of distribution, be entitled to the personal estate of the insured. *Johnson* v. *Knights of Honor,* 53 Ark. 255, 8 L.R.A. 732.

"The phrase 'legal heirs,' as used in the by-laws of a benefit society describing the person to whom payment shall be made if the member has not disposed thereof, means next of kin, or perhaps in a still broader sense includes dependents as well as next of kin. Therefore when a member left neither widow nor child, his mother, who was dependent on him at the time of his death, was held entitled to the fund. *Britton* v. *Supreme Council of R. A.,* 46 N. J. Eq. 102.

"The word 'heirs,' describing the beneficiaries of a policy of life insurance, is held to mean the persons entitled to the surplus of personal estate under the statute of distributions, who in this case were the widow and children, and that they were entitled to the insurance in the proportion indicated by that statute. *Leavitt* v. *Dunn,* 56 N.J.L. 309.

"The word 'heirs' in the constitution of a benefit association naming 'widows, orphans, and heirs or devisees' as persons to be benefited, is not used in its restricted sense, but includes anyone to whom the estate of the deceased might pass by operation of law. *Lamont* v. *Grand Lodge Iowa L. of H.,* 31 Fed. Rep. 177.

" *     *     *     *     *     *     *

"While there is some diversity of decisions, nearly all cases hold that the word 'heirs' in describing the person to whom life insurance is payable will include a widow of the insured.

"A widow is included among the 'heirs at law' within the meaning of an insurance certificate payable to the heirs at law of the member, where, under the laws of the state, she would be entitled to a distributive share. *Mullen* v. *Reed*, 64 Conn. 240, 24 L.R.A. 664.

"A certificate payable to the 'heirs' of the insured is held to include the widow as one of the heirs where the statutes make her an heir as to personal property. *Lyons* v. *Yerex*, 100 Mich. 214." See also 3 L.R.A. (N. S.) 904 and 14 R.C.L. 1373.

Under the law in force in Puerto Rico, the heirs in the instant case are the widow and the sisters of Espósito Avilés, the widow being entitled to the usufruct of one-half of the proceeds, the other half to be divided equally among the sisters. Section 11 of the Act to amend or repeal sections 795, . . . . . of the Civil Code, approved in 1905, Comp. Stat. 1911, p. 688.

The decision appealed from must be reversed and the case remanded to the lower court for further proceedings not inconsistent with this opinion.

Mr. Justice Wolf concurs in the result.